GARY G. MYNATT, Plaintiff-Appellee,
v.
VENUS T. MYNATT, Defendant-Appellant.
No. 28875.
Intermediate Court of Appeals of Hawaii.
July 21, 2009.
On the briefs:
Leslie C. Maharaj for Defendant-Appellant.
Stanley T. Kanetake Attorney for Plaintiff-Appellee.

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Fujise and Leonard, JJ.)
Defendant-Appellant Venus T. Mynatt (Ms. Mynatt) appeals from the Amended Decree Granting Absolute Divorce and Awarding Child Custody entered on November 2, 2007 by the Family Court of the First Circuit (Family Court),[1] and also seeks relief from the Decree Granting Absolute Divorce and Awarding Child Custody filed on July 30, 2007, and the Order Granting Plaintiff-Appellee Gary Mynatt's (Mr. Myantt's) Motion to Reconsider, Alter, or Amend Divorce Decree filed on August 9, 2007 .
Ms. Mynatt raises the following points of error on appeal:
(1) The Family Court erred in its determination that the marital partnership ended on November 15, 1998 and should have determined that the marital partnership ended upon the completion of the evidentiary portion of the trial on March 19, 2007.
(2) The Family Court erred in not awarding Ms. Mynatt a percentage of Mr. Mynatt's survivor benefits which would allow her to continue receiving federal healthcare benefits for the remainder of her life.
(3) The Family Court erred in granting Mr. Mynatt's Motion to Reconsider, Alter or Amend Divorce Decree since the underlying decree accurately stated the decision of the Court regarding benefit calculations and accurately set forth the language that is required to be in the decree to comply with the language required by the Federal Employee Retirement System.
Upon a thorough review of the record and the briefs submitted by the parties, and having duly considered the issues and arguments raised on appeal, as well as the constitutional, statutory, and case law relevant thereto, we resolve Ms. Mynatt's contentions as follows:
(1) Ms. Mynatt argues that the Family Court clearly erred in determining the termination date of the marital partnership on the following three grounds: (a) under the partnership model of marriage, a final division of marital property can be decreed only when the partnership is dissolved and not after a declaration by either party that the marriage has ended; (b) the parties were still engaged in sexual relations as of April 1999; and (c) Ms. Mynatt continued to contribute to the value of the marital partnership by allowing Mr. Mynatt to reside in her family-owned residence rent free which allowed him to build up his retirement faster.
"The partnership model is the appropriate law for the family courts to apply when exercising their discretion in the adjudication of property division in divorce proceedings." Touqas v. Touqas, 7 6 Hawai'i 19, 28, 868 P.2d 437, 446 (1994). Ms. Mynatt contends that, according to this court's precedent, we should consider the end date of the marital partnership to be March 19, 2007, the Date of Completion of the Evidentiary Part of the Trial (DOCOEPOT):
Under the partnership model of marriage we have accepted, a final division of marital property can be decreed only when the partnership is dissolved and not after a declaration by either spouse that the marriage has ended. Hence, the termination point of the marriage partnership for purposes of property division is the conclusion of the divorce trial.
Markham v. Markham, 80 Hawai'i 274, 287, 909 P. 2d 602, 615 (App. 1996) (citation, brackets, and internal quotation marks omitted).
Instead of using the DOCOEPOT for dividing marital property, the Family Court determined that, based on the extraordinary circumstances that existed in this case, a deviation from the partnership model was just and equitable. Deviation from the partnership model and the extent of deviation is determined by valid and relevant considerations (VARCs).
The Partnership Model requires the family court, when deciding the division and distribution of the Marital Partnership Property of the parties part of divorce cases, to proceed as follows: (1) find the relevant facts; start at the Partnership Model Division and (2) (a) decide whether or not the facts present any VARCs authorizing a deviation from the Partnership Model Division and, if so, (b) itemize those considerations; if the answer to question (2) (a) is "yes," exercise its discretion and (3) decide whether or not there will be a deviation; and, if the answer to question (3) is "yes," exercise its discretion and (4) decide the extent of the deviation.
Schiller v. Schiller, 120 Hawaii 283, 287, 205 P.3d 548, 552 (App. 2009) (citations, brackets, and internal quotation marks omitted).
In this case, the Family Court used the following VARCs to justify a deviation from the partnership model;
a. Defendant covertly withdrew her HMSA retirement funds (a category 5 asset) and converted it entirely to her own exclusive use,
b. Defendant failed to pay federal and state taxes, penalties and interest caused by her withdrawal of said retirement funds and compelled Plaintiff to pay the same.
c. Announced the marriage to Plaintiff was over and moved thousands of miles away with no intention of returning.
d. Abandoned Plaintiff and their children.
e. Cohabited with a third party, became pregnant twice, gave birth once and lived with the third party and their child as an "intact family" and continues to openly live together so that there had been a de facto divorce.
f. Refused to cooperate with discovery and necessitated motions to compel.
g. Acted to prolong and make more difficult and expense [sic] the divorce process.
h. Attempted to delay the inevitable divorce in order to claim a longer duration of the marriage than the reality.
On appeal, Ms. Mynatt does not challenge any of these VARCs or the Family Court's Findings of Fact (FOFs), which also support the deviation. Based on the undisputed FOFs and the VARCs identified by the Family Court,[2] we conclude that the Family Court did not abuse its discretion in deviating from the partnership model. The record on appeal contains substantial credible evidence of sufficient quality and probative value to enable a person of reasonable caution to conclude that the Mynatt marital partnership terminated on November 15, 1998.
Ms. Mynatt testified that, when she returned to Hawai'i in April of 1999 for a wedding, she had "intimate relations" with Mr. Mynatt. However, Ms. Mynatt's testimony in that regard was not included in the Family Court's FOFs. As noted above, the undisputed FOFs (including, inter alia, that Ms. Mynatt permanently left the marriage in 1998 to live in Chicago, with another man, with whom she had a child in 2000) provide substantial evidence to support the termination date of November 15, 1998, which is the date upon which Ms. Mynatt informed Mr. Mynatt, during a visit to Hawai'i, that she was permanently relocating to Chicago and that the "marriage was over."
There is a lack of evidence in the record supporting Ms. Mynatt's contention that she contributed to the marital partnership after November 15, 1998. The FOFs include that, when Ms. Mynatt relocated to Chicago, she left large debts that were ultimately paid by Mr. Mynatt and she did not pay any child support. The home that Mr. Mynatt continued to live in with the parties' children belonged to Ms. Mynatt's parents and there is no evidence that Ms. Mynatt owned any interest in or contributed to the financing or maintenance of the property.
The Family Court did not abuse its discretion in deviating from the partnership model and determining that the date of termination of the parties' marital partnership was November 15, 1998.
(2) Ms. Mynatt argues that the Family Court erred in denying her an award of a percentage of Mr. Mynatt's survivor benefits. The Family Court properly considered the factors enumerated in HRS § 580-47(a). Although no survivor benefits were awarded, Ms. Mynatt was awarded an interest in Mr. Mynatt's Thrift Savings account equal to 50% of the balance on November 15, 1998 plus interest through March 2007, a $100,000 life insurance policy on Mr. Mynatt's life, with Mr. Mynatt bearing sole responsibility for the insurance premiums until he retires, and a share in Mr. Mynatt's federal employees' retirement benefits based on the November 15, 1998 termination date. At her own expense, Ms. Mynatt was allowed to maintain health insurance benefits available through Mr. Mynatt's job or retirement benefits. We will not disturb the sound discretion of the Family Court in making this award. See, e.g., Wong v. Wong, 87 Hawai'i 475, 486, 960 P.2d 145, 156 (App. 1998) (The Family Court possesses wide discretion in making its discretionary decisions and those decisions will not be set aside unless there is manifest abuse of discretion.)
(3) Ms. Mynatt failed to cite any specific error or provide any discernible argument that supports her argument that the Family Court abused its discretion in reconsidering, in part, the July 30, 2007 divorce decree, to conform the language of the written decree to the Family Court's oral decision, as reflected in the trial transcript.
For these reasons, we affirm the Family Court's November 2, 2007 Amended Decree Granting Absolute Divorce and Awarding Child Custody.
NOTES
[1] The Honorable Gregg Young presided.
[2] As Ms. Mynatt did not challenge the VARCs or the Family Court's FOFs, we do not review each of the VARCs to determine whether, individually, they should be considered as grounds for deviating from the marital partnership model.